D. GILL SPERLEIN (172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California  94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff
CELESTIAL, INC.

FILED
2012 FEB -8 PH 2:12
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

**FILED BY FAX**

| | |
|---|---|
| CELESTIAL, INC, <br><br> Plaintiff, <br><br> vs. <br><br> GARY CATALANO, KENNY DAUGHERTY, CYNTHIA MOLNAR, MARTHA SEVERINO, SHALE SMITH, and DAVID SOPP, <br><br> Defendants. | ) CASE NO.: C-11-8512 GHK (MRXx) <br> ) <br> ) <br> ) FIRST AMENDED COMPLAINT: <br> ) <br> ) (1) COPYRIGHT INFRINGEMENT; <br> ) (2) CONTRIBUTORY COPYRIGHT INFRINGEMENT; and <br> ) (3) NEGLIGENCE; <br> ) <br> ) JURY TRIAL DEMANDED <br> ) |

## INTRODUCTION

1.   This is an action by CELESTIAL, INC., a California corporation, to recover damages arising from infringement of a Celestial, Inc. owned motion picture

-1-

by Defendants GARY CATALANO, KENNY DAUGHERTY, CYNTHIA MOLNAR, MARTHA SEVERINO, SHALESMITH, and DAVID SOPP and to enjoin Defendants from future infringement.

2. Defendants without authorization reproduced and distributed Celestial, Inc.'s motion picture. Celestial previously registered the copyright for the motion picture with the United States Copyright Office. The U.S. Copyright Office assigned the work the registration number PA 1-715-691. A true and complete copy of the registration is attached hereto as exhibit A.[1]

3. On November 8, 2011, Celestial Productions released and published the movie at issue in this action.

4. A mere eight days later, on November 16, 2010, using BitTorrent technology, Defendants acted in a collective and interdependent manner in the unlawful reproduction and distribution of Plaintiff's motion picture by sharing pieces of the motion picture (bits) between themselves and other bit torrent users.

5. Each time individuals such as the Defendants in this matter unlawfully distribute a copy of Plaintiff's copyrighted Motion Picture to others over the Internet, each recipient can then further distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of

---

[1] Bryan W. Ott, dba Celestial Productions originally registered the copyright, but later assigned the entire copyright to Celestial, Inc.

even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to a near limitless number of people.

6. By engaging in such illegal distribution of its works, within days of the release of the work, the Defendants infringed Plaintiff's exclusive distribution rights and deprived Plaintiff of its ability to sell the work in the market place at its true value.

7. Plaintiff seeks redress for the Defendants' infringement of its exclusive rights in the motion picture, and for injunctive relief to stop Defendants from continuing to infringe upon Plaintiff's copyrighted work.

## JURISDICTION

8. This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101, *et. seq.,* and 28 U.S.C. §§ 1331 and 1338(a).

9. Defendants reside in, solicit, transact, or are doing business within the jurisdiction; or they have committed unlawful and intentional tortuous acts both within and outside the jurisdiction, directing those acts at this jurisdiction, with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

10.     The audiovisual file that each of the Defendants reproduced and distributed clearly indicates displays within the first 11 seconds of play the title of the work, the name of the producer and the California address of the producer.  As the Defendants engaged in an intentional tort (copyright infringement) against a California company, and the infringed material clearly identified the name and California address of Plaintiff, identifying it as the producer of the movie, the Defendants knew or should have known that infringement upon the copyright would cause harm and damage to Plaintiff in California.

11.     Plaintiff's claims arise out of the Defendants' conduct that gives rise to personal jurisdiction over Defendants.  By taking the affirmative act of both downloading and uploading a known California company's intellectual property, Defendants engaged in intentional acts.  As the Defendants knew or should have known (and only could not have known through willful blindness) that the copyright they infringed upon was California intellectual property, the Defendants expressly aimed their acts at a California company.

12.     The Plaintiff is well-known as being a California company and the entertainment industry is commonly known to be centered in California.  There was clearly foreseeable harm in this jurisdiction, and the Defendants' conduct caused harm that they knew or should have known was likely to be suffered in this forum.

13. It was a foreseeable consequence of the Defendants' actions that the Plaintiff would suffer harm to its profits, business reputation, and goodwill. It was foreseeable that Plaintiff would suffer these harms in this jurisdiction and venue.

## VENUE

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

## THE PARTIES
### THE PLAINTIFF CELESTIAL, INC.

15. Celestial, Inc. is a California corporation with its principal place of business located at 23248 Canzonet Street Woodland Hills CA 91367. Celestial, Inc. produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, etc.

### THE DEFENDANTS

16. All of the Defendants republished and duplicated the Plaintiff's motion picture. However, not only did they replicate the exact same motion picture, but all of the Defendants reproduced, and distributed the precise same copy and same hash version (UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF). Thus, all Defendants replicated and shared with one another the exact same precise file and portions thereof in a completely interconnected conspiracy and concerted effort to deprive Plaintiff of its exclusive rights under the Copyright Act.

17. Plaintiff is informed and believes and based thereon alleges that each of the Defendants, was and is the agent of the other Defendants, acting within the purpose and scope of said agency. Plaintiff is further informed and believes and based thereon alleges that each of the Defendants, authorized and ratified the conduct herein alleged of each of the other Defendants.

18. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants performed, participated in, abetted in some manner, and are responsible for, the acts described in this Complaint and proximately caused the damages resulting there from.

19. Each of the named Defendants engaged in their copyright infringement scheme together. They all used the same torrent-sharing website to coordinate their copyright theft; they were all part of the same swarm on the same day; they all used the same tracker file; they all shared and republished the same motion picture; and linking them all together inextricably, they all shared the precise hash file of the film with each other and other individuals.

20. On August 16, 2010, each Defendant accessed the Internet for the purpose of reproducing and distributing with the remaining defendants and others peers pieces of Plaintiff's motion picture as reproduced in the file identified by the hash ID UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF.

21.     During the day of 11/16/2010 starting at least as early as 11:32:26 AM, Defendant DAVE SOPP or an agent acting with his authority, or a coconspirator, without authorization from Celestial, Inc., reproduced and distributed Plaintiff's registered Motion Picture by downloading bits of the digital file identified as Hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF from various bit torrent peers. As SOPP or his agent downloaded the pieces of the file from bit torrent peers, he made those pieces available for immediate, as well as, future downloading by other bit torrent peers including the remaining Defendants.  On 11/16/2010 at 11:32:26 AM GMT, Plaintiff's investigators documented that someone using an Internet account registered to DAVE SOPP, as a bit torrent peer, offered Hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF for other bit torrent peers to download.  Plaintiff is informed and believes and based thereon alleges that DAVE SOPP, his agent, or coconspirator continued to make pieces of the file available to other bit torrent peers, thereby making it available for the remaining Defendants and other peers to download and further distribute.

22.     The remaining Defendants acted in an identical fashion first accessing the Internet to download pieces of file hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF from peers, including other Defendants, and then further distributing those pieces to other peers including the

-7-

other Defendants. Plaintiff's investigators documented those Defendants accessing the Internet as follows.

23. On 11/16/2010 at 11:33:26 AM, CYNTHIA MOLNAR, her agent, or coconspirator, accessed the Internet to offer pieces of hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF using the ip address 96.251.63.181.

24. On 11/16/2010 at 11:59:51 AM, GARY CATALANO, his agent, or coconspirator accessed the Internet to offer pieces of hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF using the ip address 71.251.171.170.

25. On 11/16/2010 at 12:04:58 PM, SHALE SMITH, his agent, or coconspirator, accessed the Internet to offer pieces of hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF using the ip address 99.50.233.118.

26. On 11/16/2010 at 12:49:27 PM, KENNY DAUGHERTY, his agent, or coconspirator, accessed the Internet to offer pieces of hash UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF using the ip address 71.108.18.114.

27. On 11/16/2010 at 08:16:57 PM, MARTHA SEVERINO, her agent, or coconspirator, accessed the Internet to offer pieces of hash

UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF using the ip address 75.22.119.229.

## FACTS COMMON TO ALL CLAIMS

28. Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

29. Technological advances have made it increasingly possible to transfer large amounts of data, including digital video files, by and through the Internet. As Congress and the courts clarify the law and close legal loopholes in order to hold infringers liable for their actions, would-be infringers develop new and often increasingly complex means of engaging in piracy, hoping that the complexity of their systems will help them avoid detection, identification, and prosecution. Defendants' infringement represents one of these manifestations of on-line digital piracy.

30. BitTorrent is a peer-to-peer file sharing protocol used for distributing and sharing data on the Internet, including motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm," or group, of hosts to download and upload from each other simultaneously. The process works as follows. First, users download a torrent tracker file onto their computer. This file contains a unique hash code known as the SHA-1 hash – a unique identifier generated by a mathematical algorithm developed

by the National Security Agency.  This hash serves as a roadmap to a BitTorrent program to download all the pieces of a file such as a motion picture or music file. Second, the user places the torrent file into a BitTorrent program, also known as a BitTorrent "client" application.  This program connects uploaders of the file (i.e. those that are distributing the content) with downloaders of the file (i.e. those that are copying the content).  During this process, a tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users.

31.	For the user, this process is quite simple.  When a BitTorrent user seeks to download a motion picture, he or she merely clicks on the appropriate torrent file which may be found online on any number of BitTorrent websites.  The torrent file then instructs the client software how to connect to a tracker that will identify where the file is available and begins downloading it without any further effort from the user.

32.	Files obtained by this method are downloaded in hundreds of individual pieces (bits).  Each downloaded piece is immediately available for distribution to other users seeking the same file.  The effect of this technology makes every downloader also an uploader of the content.  This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

33. The motion picture at issue in this action is of obvious high production values and is easily discernable as a professional work. Plaintiff created the work using professional performers, directors, cinematographers, lighting technicians, set designers and editors. Plaintiff created each work with professional-grade cameras, lighting, and editing equipment.

34. As set forth specifically for in the Parties section above, Plaintiff has recorded each Defendant herein reproducing and distributing the motion picture by and through the Internet using BitTorrent technology.

## FIRST CLAIM
## COPYRIGHT INFRINGEMENT – 17 U.S.C. §501

Plaintiff Celestial, Inc. Owns Federally Registered Copyrights of Various Creative Works

35. Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

36. At all times relevant hereto, Plaintiff has been the producer and owner of the audiovisual work *Big Dick Glory Holes*, vol. 6, which Defendants reproduced and distributed by and through the Internet using BitTorrent technology.

37. Plaintiff holds a copyright registration certificate from the United States Copyright Office for the motion picture. The registration certificate number is PA 1-715-691.

<u>Defendants Willfully Infringed Plaintiff's Registered Copyrights</u>

38. Plaintiff is informed and believes and based thereon alleges that Defendants without authorization, reproduced and distributed Plaintiff's copyright registered motion picture by and through the Internet using BitTorrent technology.

39. Defendants knew or should have known that they were not authorized to reproduce or distribute Plaintiff's motion picture. During the very first second of play of the audiovisual file, it displays a warning stating that "FEDERAL LAW PROVIDES FOR CIVIL AND CRIMINAL PENALTIES FOR THE UNAUTHORIZED REPRODUCTION, DISTRIBUTION, OR EXHIBITION OF COPYRIGHTED MOTION PICTURES, VIDEO TAPES, AND VIDEO DISCS" and cites the relevant U.S. statutes.

## SECOND CLAIM
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

40. Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

41. Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

42. Each Defendant has directly engaged in the unauthorized reproduction and distribution of Plaintiff's copyright registered work as set forth above.

43. Each Defendant materially contributed to the direct infringement of the subsequently named Defendants by providing pieces of Plaintiff's copyright registered work to those Defendants directly and/or by allowing those Defendants to download the infringing copies from other peers more quickly and more efficiently by adding to the overall efficiency of the swarm on the date in question.

44. Defendants knew they were infringing Plaintiff's copyright and knew the other swarm participates, including the other Defendants, also were infringing Plaintiff's work.

45. It is helpful to think of the process of transferring files using BitTorrent technology in the context of a constructed puzzle. In furtherance of sharing this puzzle, it is deconstructed into tiny pieces. These pieces are then uploaded and distributed among one or more peers. Once a peer identifies a file he wants to download, the Network locates all the peers currently on line and offering for distribution the identical file as identified by the unique HASH ID. The technology, in conjunction with software residing on tracking servers, is capable of locating all the unique corresponding pieces that make up the original file. The software then downloads pieces of the file from various peers, always seeking the pieces that will download the fastest. Once all the pieces are located and downloaded, the software places the pieces into the original order thereby reconstructing the entire original copyrighted file.

46. When users possess the same infringing file as identified by the unique hash value (as in this case), it is because each infringer possesses an exact digital copy containing the exact pieces unique to that file. Returning to the puzzle analogy, other puzzles may be created out of the same motion picture, but those pieces will not fit together with the pieces from another puzzle, even if made from the same motion picture. Only pieces from the puzzle identified by the unique hash i.d. will fit together. Thus, the BitTorrent users rely on other users that are working with the same version of the puzzle at the same time.

47. Each of the Defendants downloaded, uploaded, and distributed the precise same hash file - UOUXFRBA3KUQZTX5ZUWO2ZT6ZMJ6DXDF.

48. Because it is the exact same motion picture, using the exact same hash, during the same time period, and because each Defendant then materially contributed to the infringing acts of the subsequently named Defendants the transaction of events at issue in this Complaint is common to all Defendants, thus rendering the Defendants properly joined in this action.

49. Each of the peers who illegally downloaded the movie derived portions of their illegal replication of the file from multiple peers including the other Defendants. At the same time, each Defendant offered pieces of the file to help other peers, including the remaining Defendants, replicate and compile new copies of the file.

50. Each Defendant assisted any other Defendant who was part of the swarm during overlapping times, by either exchanging pieces with that user directly or by providing an alternative source for peers thereby making the swarm work more efficiently and increasing the speed in which each other Defendant was able to download the entire audiovisual file.

51. The Defendants were conscious of their own infringement and of the fact that multiple other persons derivatively downloaded from them the file containing Plaintiff's motion picture.

52. The infringement by other BitTorrent users could not have occurred but for the Defendants' participation in uploading the Plaintiff's protected work. As such, the Defendants' participation in the infringing activities of others is substantial.

53. Each Defendant is contributory liable for the infringing acts of the subsequently named Defendants.

54. Each Defendant is jointly and severally liable for the harm Plaintiff suffered as a result of the Defendants contribution in the infringement of its copyright registered work.

First Amended Complaint
C-11-8512 GHK (MRWx)

# THIRD CLAIM
# NEGLIGENCE

55. Plaintiff repeats and incorporates by this reference the allegations set forth in previous paragraphs.

56. Defendants accessed or controlled access to the Internet connection used in performing the unauthorized copying and sharing of Plaintiff's Motion Picture as described above.

57. Defendants failed to adequately secure their Internet access, whether accessible only through their computer when physically connected to an Internet router, or accessible to many computers by use of a wireless router, and failed to prevent its use for this unlawful purpose.

58. Reasonable Internet users take steps to secure their Internet access accounts to prevent the use of such accounts for nefarious and illegal purposes. As such, Defendants' failure to secure their Internet access accounts, and thereby prevent such illegal uses thereof, constitutes a breach of the ordinary care that reasonable persons exercise in using an Internet access account. In fact, most Internet service providers, including those who provided service for Defendants, generally require in their Terms of Service or Terms of Use that subscribers secure wireless routers with a password.

59. Upon information and belief, Plaintiff alleges that Defendants' failure to secure their Internet access allowed for the copying and sharing of Plaintiff's Motion Picture on Defendants' respective Internet connections, and interfering with Plaintiff's exclusive rights in the copyrighted work.

60. By virtue of this unsecured access, Defendants negligently allowed the use of their Internet access accounts to perform the above-described copying and sharing of Plaintiff's copyrighted Motion Picture.

61. Had Defendants taken reasonable care in securing access to their Internet connections, such infringements as those described above would not have occurred by the use of their Internet access accounts.

62. Defendants' negligent actions allowed others to unlawfully copy and share Plaintiff's copyrighted Motion Picture, proximately causing financial harm to Plaintiff and unlawfully interfering with Plaintiff's exclusive rights in the Motion Picture.

## JURY DEMAND

63. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable by a jury in this action.

## PRAYER

WHEREFORE, Plaintiff Celestial, Inc. respectfully requests judgment as follows:

(1)     That the Court enter a judgment against all Defendants that they have: a) willfully infringed Plaintiff's rights in federally registered copyrights under 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by all Defendants' acts and conduct set forth in this Complaint.

(2)     That the Court issue injunctive relief against all Defendants, and that all Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from copying, posting or making any other infringing use or infringing distribution of audiovisual works, photographs or other materials owned by or registered to Plaintiff;

(3)     That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendants' possession or under their control;

(4)     That the Court order all Defendants to pay Plaintiff's general, special, actual and statutory damages as follows: Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or in the alternative, enhanced statutory damages in the amount of one hundred fifty thousand dollars ($150,000.00) per infringed work, pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of Plaintiff's copyrights;

(5) That the Court order all Defendants to pay Plaintiff both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to 17 U.S.C. § 504; and

(6) That the Court grant to Plaintiff such other and additional relief as is just and proper.

Dated: *February 6, 2012*             Respectfully submitted,

_____

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN
Attorney for Plaintiff, Celestial, Inc.